UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVONE HILL,

                        Plaintiff,                         Case Number 25-10280

v.                                                      Honorable David M. Lawson

CITY OF DETROIT, WALTER BATES,
FRASIER ADAMS a/k/a FRAZER ADAMS,
ERNEST WILSON, and FRED WATKINS,

                         Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS THE AMENDED COMPLAINT

Plaintiff Lavone Hill was convicted of murders he said he did not commit, and he spent over 20 years in prison before he was released and the charges against him were dismissed. He has filed the present lawsuit against the City of Detroit and several of its police officers who, Hill says, coerced false testimony from witnesses, hid evidence of his innocence, and fabricated other evidence. The defendants have moved to dismiss most (but not all) of the counts of the complaint. The individual defendants claim qualified immunity, and the City says, among other things, that the City's municipal bankruptcy bars the claims against it. The culpable actor here, according to the amended complaint, is defendant Walter Bates, who himself was involved in a string of bank robberies during and after Hill's prosecution. But the amended complaint fails to plead facts showing the personal involvement of defendants Wilson, Watkins, or Adams. Nor has the plaintiff pleaded facts that will avoid the impact of the City's bankruptcy discharge. The motions to dismiss will be granted as to all defendants except Walter Bates, and the case against him will proceed.

I.  Facts and Procedural History

Because the motions challenge the sufficiency of the complaint (the amended complaint was filed only to correct a misnomer of one defendant, and none of the substantive allegations were altered) under Federal Rule of Civil Procedure 12(b), all of the following facts are drawn from the operative pleading and are accepted as true.  *Eastep v. City of Nashville, Tennessee*, 156 F.4th 819, 826 (6th Cir. 2025).

On September 8, 2001, 28-year-old Dushawn Luchie, Sr., and 24-year-old Ronnie Craft were shot and killed on Keating Street, in Detroit, Michigan, following a game of dice.  Police investigators who responded to the scene initially did not locate any witnesses to the shooting, and no physical or forensic evidence ever was recovered tying any suspects to the scene.  Am. Compl. ¶¶ 26-29, ECF No. 55, PageID.1130.

Two nights after the shooting, police arrested Andre Meridith on unrelated drug charges.  Meridith was held for several days and questioned by defendant Detroit Police Department (DPD) Sergeant Walter Bates.  Am. Compl. ¶¶ 30-31, PageID.1131.  On September 10, 2001, Bates and other officers — not identified by name in the amended complaint — interrogated Meridith and took a written statement.  The written statement was prepared by Bates and was only signed (but not written) by Meridith, who could not read or write proficiently.  *Id.* ¶¶ 31-37.  Before taking the statement, Bates suggested to Meridith that plaintiff Lavone Hill had committed the Keating Street murders.  *Id.* ¶ 34.  The statement prepared by Bates falsely stated that Meridith saw Hill and another man shoot the victims with a handgun while walking down Keating Street.  *Id.* ¶¶ 37-38.  Bates refused to release Meridith until he signed the false statement, and he "made Mr. Meridith sign" the statement.  *Id.* ¶¶ 40-41.  No other witness ever implicated Hill in the shooting.  *Id.* ¶ 39.  Hill was arrested and charged with the Keating Street shooting on April 12, 2002.  *Id.* ¶ 42.

Several weeks before Hill appeared for a preliminary examination, defendant Bates hatched a plan to commit a series of bank robberies with his brother. Am. Compl. ¶ 43, PageID.1132. Also, at the time, Bates had been removed as the officer in charge of the Keating Street murder investigation. *Id.* ¶ 44. (Bates's robbery spree and other disciplinary history is discussed further below.)

Shortly before the preliminary examination, defendant DPD Investigator Frazier (a/k/a Frazer) Adams re-arrested Meridith on a material witness warrant, and Meridith was detained for several days. Am. Compl. ¶¶ 45-46, PageID.1132. While he was in custody, Meridith was issued an investigative subpoena and questioned under oath. *Id.* ¶ 47, PageID.1133. When Meridith testified at the preliminary exam, his testimony initially tracked the statement taken by Bates, but Meridith also testified that portions of the statement were coerced by Bates and that Bates had threatened to "lock him up" if his statement was deemed "not desirable" by Bates. *Id.* ¶ 48-49. During other proceedings before Hill's trial, Meridith "informed the [court] that he would testify that Mr. Hill did not commit the murders, and that Sergeant Bates coerced him into signing the false statement by threatening perjury and imprisonment." *Id.* ¶ 50. Shortly before the trial, Meridith was told by his probation officer to contact defendant DPD Detective Ernest Wilson about a subpoena; when Meridith did so, Wilson came to his home and arrested him. *Id.* ¶ 51-52. During Hill's 2002 jury trial, Meridith recanted his statement implicating Hill in the Keating Street shootings, stating: "I don't know who shot who. I didn't see nobody kill nobody." *Id.* ¶ 53. Meridith further testified that he was not on Keating Street on the evening in question, he had no idea who committed the murders, and Sergeant Bates had threatened him and "tricked him into signing a statement he could not read." *Id.* ¶ 54-55, PageID.1134. Meridith also testified that

Bates had reiterated his threats about consequences if Meridith failed to toe the line while Meridith was being driven to an investigative subpoena interview.  *Id.* ¶ 56.

After Meridith recanted on the stand, defendant Bates was called to testify about the substance of the statement that he purportedly took from Meridith.  Am. Compl. ¶ 58.  Bates testified that Meridith had supplied the narrative of the shooting, and that he was not coerced or threatened.  *Id.* ¶ 59.  Defendant DPD Sergeant Fred Watkins also testified at the trial that Meridith had supplied the information connecting Hill to the murders.  *Id.* ¶ 60.

Plaintiff Lavone Hill testified at trial that he did not commit the murders and that he was at home with his girlfriend when the shootings occurred.  Am. Compl. ¶ 61, PageID.1135.  Hill's girlfriend also testified and corroborated his alibi.  *Id.* ¶ 65.  During closing arguments, both sides focused their arguments on the credibility of the contradictory testimony by Mr. Meridith and Sergeant Bates.  *Id.* ¶ 63.

On September 6, 2002, the jury convicted Hill on two counts of first-degree murder, and he was sentenced to life imprisonment without parole.  Am. Compl. ¶¶ 64-65.  Hill appealed his conviction arguing that (1) the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt because it consisted of testimony from a single eyewitness who recanted his statement implicating Hill at trial, and (2) the prosecutor made improper inquiries of the witness implicating Hill and "attacked defense counsel" during the closing argument.  The Michigan Court of Appeals rejected those arguments and affirmed.  *People v. Hill*, No. 246229, 2004 WL 1079807, at *2 (Mich. Ct. App. May 13, 2004).  Hill filed an application for leave to appeal the decision, which was denied by the Michigan Supreme Court.  *People v. Hill*, 471 Mich. 920, 688 N.W.2d 829 (2004).  Hill subsequently filed a petition for a writ of habeas corpus in which he raised the same two claims previously presented to the state courts.  He also asserted his "actual innocence"

of the crimes of conviction.   As to the actual innocence claim, the district court observed: "Petitioner alleges that he is entitled to habeas relief because he is actually innocent.   In support of this claim, Petitioner states that he has newly-discovered evidence that Sergeant Bates participated in bank robberies during the time of the investigation and prosecution of this crime.   He also points to studies and articles discussing unrelated cases involving perjury by witnesses and police coercion of witnesses." *Hill v. Warren*, No. 05-71080, 2006 WL 1806479, at *9 (E.D. Mich. June 29, 2006) (Zatkoff, J.).   The habeas court rejected all of the claims and denied the writ.

Many years later, Hill secured assistance from the Michigan Innocence Clinic, which undertook a further investigation of the crimes.   Clinic staffers uncovered several pieces of evidence suggesting that Hill was unjustly convicted.   Am. Compl. ¶ 69, PageID.1136.   First, Dushawn Luchie, Jr. (son of one of the victims, Dushawn Luchie, Sr.) attested that a family friend — Deandre Murray — had confessed to Luchie Jr. that Murray had shot Luchie Sr.   *Id.* ¶ 70. Second, witnesses Sherman Wagner and Cordell Powell attested that they were present when the shooting occurred and that Hill was not involved.   *Id.* ¶ 71.   Wagner further stated that Deandre Murray had "walked away" from the dice game after a heated exchange and returned "with a high-powered rifle" and shot the victims.   Wagner saw Murray fire "many, many shots," and saw him continue shooting at one of the victims after he fell to the ground.   *Id.* ¶¶ 74-75.   Powell similarly testified that he was present at the scene and was with the victims at another venue before going to the dice game, and that "LaVone Hill was not present for any part of the evening, and I never saw him that night."   *Id.* ¶¶ 77-81, PageID.1136-37.   Powell said that Murray had a history of conflicts with the shooting victims and that shortly after an argument occurred about the dice game Murray "appeared with an assault rifle" and opened fire.   *Id.* ¶¶ 83-85, PageID.1137-38.   Third, the Clinic secured a ballistics expert, Dr. Stephen Batzer, who reviewed shell casings retrieved at

the scene and police reports from the investigation.  Batzer determined that the shell casings were 5.56 mm caliber rounds that were fired from a rifle, not a pistol, and he found that during the trial the casings were incorrectly identified as "5.65 mm" and false testimony was given that they were fired from a pistol, not a rifle.  *Id.* ¶¶ 87-88.  The Clinic also found that a lab report form incorrectly identified the caliber of the shells, and that form had been prepared by defendant Sergeant Bates.  *Id.* ¶¶ 89.  The Michigan Innocence Clinic referred the case with their findings to the Wayne County Prosecutor's Conviction Integrity Unit (CIU).

The CIU conducted a further investigation and uncovered more evidence calling the integrity of the conviction into question.  Am. Compl. ¶ 91, PageID.1140.  First, records indicated that defendant Bates was "suspended several times" during the investigation and trial, but "none of the suspensions were disclosed" to the defense or the jury at trial.  *Id.* ¶¶ 92-93.

Second, it was found that Bates had committed a series of 15 bank robberies during the pendency of Hill's criminal trial; one of the robberies was committed the day after Bates testified at trial, and two others occurred between the preliminary examination and trial.  *Id.* ¶¶ 94-97.  The robberies were perpetrated by Bates to repay more than $100,000 in gambling debts that Bates had incurred.  *Id.* ¶ 98; *see also United States v. Bates*, 552 F.3d 472, 473-74 (6th Cir. 2009) (discussing the facts and affirming convictions for bank robbery and conspiracy).  Bates was indicted for bank robbery on November 26, 2003.  He retired from the DPD on October 2, 2004.  On November 3, 2006, Bates was convicted on charges of bank robbery and conspiracy and sentenced to 70 months in prison for his crimes.  Am. Compl. ¶¶ 121-124, PageID.1144-45.

Third, the CIU investigation also located a witness, Juan Calderin, who was not called to testify at Hill's trial.  Calderin attested that he was present at the scene when the Keating Street shooting occurred, and that he ran away when two armed men approached and opened fire.  Am.

Compl. ¶¶ 126-129, PageID.1145.  Several days later, Calderin was questioned by Sergeant Bates about the shooting, and Calderin told Bates what he knew, including giving a description of the shooters.  *Id.* ¶¶ 132-33, PageID.1146.  Bates then asked Calderin if he had seen Lavone Hill at the scene, and Calderin said Hill was not there.  Bates then "threatened Mr. Calderin and told him that if he ever 'came forward with this information about the description of the shooters that he would trump up some charges' against him and make sure Calderin goes 'to jail for a very long time.'"  *Id.* ¶¶ 133-34.  Calderin said he only came forward to talk about Bates's misconduct after he heard that Bates left the DPD and was convicted and imprisoned.  *Id.* ¶ 135.

On October 23, 2024, the Wayne County, Michigan circuit court entered an order based on a stipulation by the parties vacating Lavone Hill's conviction and sentence.  The Wayne County Prosecutor issued a remarkable statement the same day stating that no attempt would be made to retry the case, with the following commentary by Prosecutor Kym Worthy:

> I cannot say whether this defendant is guilty or not guilty of this crime.  This is what I can say definitively: Former Sgt. Bates' testimony in Mr. Hill's trial was a pivotal part of his case. No one during the trial — not the Assistant Prosecutor, not the defense attorney, or the judge was made aware of Bates' massive and ongoing criminal behavior before, during, and after the investigation and trial.
>
> Walter Bates was a serial bank robber who was later convicted and sent to Federal prison.  His actions were abominable and fell squarely within the spirit of the *Brady/Giglio* cases and should have been disclosed to the jury and all of the trial participants.  Only then could the jury have properly determined Bates' credibility.
>
> As a result, it is clear that Mr. Hill did not receive a fair trial.  He will not be retried because there is no way in the world that this office would put Walter Bates on any witness stand.  Not much shocks me anymore, but this did.  I have never seen anything like this in all of my decades of being a judge or a prosecutor.

Am. Compl. ¶ 170, PageID.1152-53.

The plaintiff filed his complaint on January 23, 2025 and an amended complaint was filed on July 16, 2025.  The amended complaint simply corrected a misnomer and did not add any new substantive allegations.  The City filed its motion to dismiss the original complaint on March 7,

2025, and individual defendants Walter Bates, Ernest Wilson, and Fred Watkins filed their motion on May 22, 2025. Those motions are construed as if directed to the amended complaint. Defendant Frazier Adams successfully avoided service of process for a while but recently was served and appeared by filing a motion to dismiss.

The amended complaint pleads counts alleging (1) Fourteenth Amendment Due Process violations based on the alleged withholding of *Brady* information (Count I), (2) Due Process violations based on fabrication of evidence (Count II), (3) conspiracy to interfere with civil rights, contrary to 42 U.S.C. § 1985 (Count III), (4) civil conspiracy (via 42 U.S.C. § 1983) (Count IV), (5) malicious prosecution in violation of the Fourth Amendment (Count V), (6) unlawful detention without probable cause contrary to the Fourth Amendment (Count VI), (7) municipal liability claims against the City of Detroit (Counts VII, VIII), and (8) gross negligence and malicious prosecution under Michigan state law (Counts IX, X). With the exception of the municipal liability claims, all of the causes of action are pleaded in generic fashion against the "Officer Defendants" without specification of particular named individuals, except in certain paragraphs where defendant Walter Bates is mentioned by name as a culpable party.

## II. City of Detroit's Motion to Dismiss

The City argues that the complaint fails to state a viable claim against it mainly because all of the claims are barred by the 2014 municipal bankruptcy discharge, since the plaintiff never filed a timely proof of claim in the bankruptcy court. As alternative arguments, the City contends that the municipal liability claims are insufficiently pleaded because the plaintiff has failed to identify any municipal policy or practice that was the moving force behind his wrongful conviction or any way in which the City's training of its officers was inadequate. For another backup argument, the City says that the Court should stay the case to see if the plaintiff accepts a settlement under the

State of Michigan's Wrongful Incarceration Compensation Act, which could result in a release of the municipal claims.  *See* Mich. Comp. Laws § 691.1755(8).

Focusing on the bankruptcy discharge argument, the plaintiff responds that his claims were not "fairly contemplated" until new evidence of defendant Bates's criminal misconduct and disciplinary history was discovered through the efforts of the Michigan Innocence Clinic in 2016, and the equitable concept of "excusable neglect" should rescue the claims because the applicable factors weigh in favor of an exemption from the bankruptcy discharge bar.

The City's bankruptcy discharge is dispositive of the municipal liability claims against it because its liability on all "prepetition" claims "was discharged when the Plan [of Adjustment] was confirmed on November 12, 2014, and became effective on December 10, 2014." *In re City of Detroit, Michigan*, 548 B.R. 748, 751 (Bankr. E.D. Mich. 2016).  Claimants seeking damages from the City based on claims that can be characterized as prepetition claims, "are enjoined from pursuing a recovery beyond what is provided for in the Plan." *Ibid.* (citing 11 U.S.C. §§ 524(a)(2), 901(a), 944).

"The Bankruptcy Code defines 'claim' as a 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" *Id.* at 761 (quoting 11 U.S.C. § 101(5)). "'Congress intended by this language to adopt the broadest available definition of "claim,"' which includes 'all legal obligations of the debtor, no matter how remote or contingent.'" *Ibid.* (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *In re Huffy Corp.*, 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (quotations marks omitted)).

"'[F]ederal law determines when a claim arises under the Bankruptcy Code.'" *In re Castellino Villas, AKF, LLC*, 836 F.3d 1028, 1034 (9th Cir. 2016) (quoting *In re SNTL Corp.*, 571

F.3d 826, 839 (9th Cir. 2009)).   When determining whether a creditor's claim arose before a bankruptcy petition was filed, most federal courts, including bankruptcy courts within the Sixth Circuit, "use the 'fair contemplation' test. Under this test, 'a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.'"   *Ibid.* (quoting *SNTL Corp.*, 571 F.3d at 839); *see also In re City of Detroit, Michigan*, 548 B.R. at 761 (collecting cases); *see also VillCool Fuel, Inc. v. Board of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000) ("It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued.").

The plaintiff's claim arose before Detroit entered into bankruptcy, and he failed to present his claim in the bankruptcy court before all pre-petition claims were extinguished by the 2014 municipal bankruptcy discharge.   The relevant historical facts are undisputed.   The plaintiff was convicted in 2002 based on false testimony and Officer Bates's alleged misconduct.   On July 18, 2013, the City of Detroit filed a petition for municipal bankruptcy under Chapter 9 of the Bankruptcy Code.   The bankruptcy court set a deadline of February 21, 2014 for the filing of proofs of claims against the City.   The plaintiff never presented a proof of claim, despite the fact that he pursued multiple appeals and collateral attacks on his conviction in the interim between 2002 and 2014, including a habeas petition that was denied by Judge Zatkoff in June 2006.   *Hill v. Warren*, No. 05-71080, 2006 WL 1806479 (E.D. Mich. June 29, 2006).   The City was granted a discharge in bankruptcy on December 10, 2014.   *In re City of Detroit, Michigan*, 548 B.R. 748 (Bankr. E.D. Mich. 2016).

In *Sanford v. City of Detroit*, the Court addressed this identical issue and on indistinguishable facts ruled that prepetition wrongful prosecution claims against the City of

Detroit were barred by the bankruptcy discharge. *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018).  In that case, Devonte Sanford contended that he was wrongfully convicted of multiple murders based on false testimony and the misconduct of a Detroit police officer.  Throughout the criminal proceedings, and from at least 2008, he declared his innocence and insisted that his confession was coerced by improper police conduct.  Sanford contended — accurately — "that he could not have sued the City until his convictions were set aside, which did not happen until after the bankruptcy." *Ibid.*  Nonetheless, the Court found that the claims presented were within Sanford's "fair contemplation" before the City filed its bankruptcy petition, and therefore they were barred by the bankruptcy discharge, "notwithstanding that the plaintiff could not file suit on his claims until his criminal conviction was overturned." *Ibid.* (citing *In re Motors Liquidation Co.*, 576 B.R. 761, 777 (Bankr. S.D.N.Y. 2017)); *see also In re City of Detroit*, No. 23-12600, 2024 WL 4349186, at *4 (E.D. Mich. Sept. 30, 2024) (upholding dismissal of wrongful conviction claims based on events that occurred before the City's bankruptcy petition was filed, applying the "fair contemplation" test).

The plaintiff has not cited any authority that would compel a departure from these holdings. He attempts to avoid the result by asserting that he was "unaware" of his claims — or at least some of the facts that support them — before "new evidence" of defendant Bates's felony crime spree and disciplinary history was uncovered in 2016, after the bankruptcy discharge.  But he has not cited any legal authority holding that a claim that was within the plaintiff's fair contemplation is exempted from the bankruptcy bar merely because new evidence supporting the claim is found after a discharge occurs.  Moreover, the plaintiff's position is belied by the public record of the 2006 habeas proceeding in which he advanced the same allegations as in the present litigation, arguing that he was actually innocent and that his trial was unfair because information about

defendant Bates's history of felony bank robbery crimes was concealed from the defense during the criminal trial. *Hill*, 2006 WL 1806479, at *9 ("Petitioner alleges that he is entitled to habeas relief because he is actually innocent. In support of this claim, Petitioner states that he has newly-discovered evidence that Sergeant Bates participated in bank robberies during the time of the investigation and prosecution of this crime. He also points to studies and articles discussing unrelated cases involving perjury by witnesses and police coercion of witnesses.").

The plaintiff also argues that his failure to present a timely proof of claim should be overlooked due to "excusable neglect." "The Supreme Court has interpreted the term 'excusable neglect' in the context of a motion for extension of time under Rule 9006(b) of the Federal Rules of Bankruptcy Procedure, explaining that 'Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *United States v. Frederick*, 422 F. App'x 404, 406 (6th Cir. 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 388 (1993)). "The Court in *Pioneer* identified the following factors to be balanced in determining whether there was excusable neglect: (1) the danger of prejudice to the nonmoving party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay, including whether the delay was within the reasonable control of the moving party; and (4) whether the movant acted in good faith." *Ibid.* (quoting *Pioneer*, 507 U.S. at 395).

As the City points out, the evaluation of whether the failure to file a timely proof of claim should be excused is a two-stage analysis in which the Court asks first whether there was "neglect" of the claim, and second whether any such neglect was "excusable." *See Pioneer*, 507 U.S. at 395 ("This leaves, of course, the Rule's requirement that the party's neglect of the bar date be 'excusable.' It is this requirement that we believe will deter creditors or other parties from freely

ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)."); *In re City of Detroit, Michigan*, 576 B.R. 552, 558-59 (Bankr. E.D. Mich. 2017) ("The Supreme Court's decision in *Pioneer* is the leading case on what 'excusable neglect' means. *Pioneer* discussed both what 'neglect' means, and how courts should determine whether neglect is 'excusable.' . . . . *If the movant shows 'neglect,' the next issue is whether the movant's neglect was excusable.*") (cleaned up; emphasis added).

The plaintiff's argument fixates on the factors applicable to whether neglect of a claim is excusable and overlooks entirely the threshold question whether the claims were, in fact, neglected. The claims here were not neglected since the plaintiff presented the same claims, based on the same alleged facts, in pre-petition appellate and collateral attacks on his conviction, including in the 2006 habeas proceeding. On indistinguishable facts, other courts have held that excusable neglect could not be shown. *E.g.*, *Burton v. Sanders*, No. 20-11948, 2021 WL 168543, at *4 (E.D. Mich. Jan. 19, 2021) ("As Defendants argue, and as Plaintiff concedes in his Response, Plaintiff maintained his innocence and filed several post-judgment motions and appeals following his conviction in 1987, and he consulted with various attorneys regarding post-conviction relief to overturn his conviction. Thus, *Plaintiff did not neglect his claims* and the eventual invalidation of his conviction and his claims against the City were within his 'fair contemplation' before the City declared bankruptcy, and therefore are barred by the City's bankruptcy.") (emphasis added).

The prepetition claims brought here against the City indisputably are barred by the bankruptcy discharge where no timely proof of claim was filed, and the plaintiff's arguments for equitable avoidance of that result are unavailing. The City's motion to dismiss the case against it will be granted.

III.  Individual Defendants' Motions to Dismiss

Hill brings a variety of claims against the individual defendants.  He singles out defendant Bates's alleged misconduct, but his claims against the others are undifferentiated for the most part, referring to them simply as "the defendants."

Defendants Wilson, Watkins, and (later) Adams move to dismiss all of the counts against them because the complaint and amended complaint do not identify any conduct that they committed individually that violates the Constitution or any laws.  Defendant Bates moves to dismiss Counts I (*Brady* violation), III (conspiracy under 42 U.S.C. § 1985), IV (conspiracy under 42 U.S.C. § 1983), VI (unlawful detention), and IX (state law gross negligence and malicious prosecution) based on a number of theories that point to the failure to state a cognizable claim.

The defendants invoke Federal Rule of Civil Procedure 12(b)(6).  To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002),

and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)). "[C]ourts may take judicial notice of facts in a public record that 'are not subject to reasonable dispute' — such as the court's ultimate resolution of a prior case." *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024); *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC,* 46 F.4th 454, 457 (6th Cir. 2022) ("While the question of whether to grant a Rule 12(b)(6) motion to dismiss is typically confined to the pleadings, we may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). However, beyond those materials, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

The plaintiff's claims of statutory and constitutional violations are presented mainly via 42 U.S.C. § 1983, through which individuals may seek redress in court against state actors for violations of rights secured by the Constitution and laws of the United States. To state a claim under that section, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). "When claiming damages for violations of constitutional rights, Plaintiffs 'must allege, with particularity, facts that demonstrate *what each defendant did* to violate the asserted constitutional

right.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis added).

### A.  Substantive Claims against Wilson, Watkins, and Adams

The plaintiff ostensibly names Wilson, Watkins, and Adams in the following federal substantive (i.e., non-conspiracy) counts of the amended complaint: Counts I (*Brady* violations), II (fabrication of evidence), V (malicious prosecution), and VI (continued detention without probable cause).  These defendants contend that the pleading is not sufficient to state a claim against them because it does not identify any individual conduct by them that violates the relevant sections of the Constitution.  They are correct.

The amended complaint fails to allege with particularity any such facts concerning involvement by any individual defendant (except Bates), and it is well settled in this circuit that generalized allegations against an undifferentiated collective of "defendants" do not measure up on this score.  *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 898 (6th Cir. 2025) ("A critical aspect of the § 1983 universe is that to be held liable, a plaintiff must demonstrate that each state actor defendant, through the defendant's own individual actions, has violated the Constitution.") (citing *Ondo*, 795 F.3d at 611; *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)) (cleaned up); *see also Ondo*, 795 F.3d at 610-11 ("Plaintiffs' excessive-force claim consisted of nonspecific allegations that unnamed officers punched them repeatedly, especially 'in the face' or 'in the nose.'. . . [T]hese allegations of physical mistreatment are not sufficiently specific under *Lanman* to withstand Defendants' motion for summary judgment.").

The amended complaint does not allege any specific factual details about what either Wilson, Watkins, or Adams supposedly did specifically to violate the plaintiff's rights.  The causes of action are couched in a generalized fashion against "defendants" or "officer defendants," except

where specific facts are pleaded describing defendant Bates's individualized misconduct. *E.g.*, Am. Compl. ¶ 196, PageID.1161 ("*Defendants* conspired to and/or withheld exculpatory or impeachment evidence, including, but not limited to, their own misconduct, the fabrication of Mr. Meridith's statement, and ballistic evidence regarding the type of bullets that were used in the Keating Street Shooting."); *id.* ¶ 214, PageID.1165 ("*Defendants* deliberately fabricated the above-referenced evidence to criminally charge, arrest, prosecute, detain, and convict Mr. Hill."); *id.* ¶ 225, PageID.1167-68 ("a. *Sergeant Walter Bates drafted a false statement* for Andre Meridith, an illiterate detainee, to sign, alleging that he witnessed Mr. Hill commit the murders; b. Sergeant Bates *and other officers misrepresented the ballistics evidence*, falsely attributing the crime to a handgun when evidence indicated the use of a high-powered rifle; c. The *Officer Defendants* manipulated and coerced witnesses, including Juan Calderin, to remain silent about exculpatory details; d. Sergeant Bates and *Defendant Officers* threatened Meridith with perjury charges and imprisonment to force his compliance with the false statement; e. *Defendant Officers* held Meridith in custody until he agreed to sign the fabricated statement; f. *Defendant Officers* detained Meridith before trial and pressured him to testify falsely, despite his recantation;") (emphasis added). Although the complaint expounds in detail about Bates's individual misdeeds, none of those passages supply any details about how defendants Wilson, Watkins, or Adams were involved.

The amended complaint does include a discursive narrative reciting evidence of misconduct by defendants Bates and Wilson in the wrongful convictions of several *other* persons who also allegedly have sued Bates or Wilson or both. Am. Compl. ¶¶ 136-161, PageID.1146-1151. However, within that extensive (and entirely irrelevant) narrative, no facts are pleaded suggesting how those other instances of misconduct by Wilson have any factual or circumstantial

overlap — or even any tangential linkage — with the specific misconduct alleged in this case by Hill.

In contrast to the detailed allegations naming Bates, the amended complaint only mentions Wilson by name once, where it is alleged that shortly before the trial, witness Meridith was told by his probation officer to contact defendant Wilson about a subpoena, and when Meridith did so, Wilson came to his home and arrested him.  Am. Compl. ¶ 51-52.  No facts are pleaded suggesting that there was any impropriety in the arrest or detention of witness Meridith *per se*, which presumably was executed pursuant to a material witness warrant.  As to Watkins, the only passage mentioning him by name states that he testified at the trial that Meridith had supplied the information connecting Hill to the murders.  *Id.* ¶ 60.  As Watkins correctly points out, "[a]bsolute testimonial immunity bars claims based on the defendant's testimony in a judicial proceeding." *Ramsey v. Rivard*, 110 F.4th 860, 865 (6th Cir. 2024) (citing *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002)).  The lone allegation against Watkins concerning his trial testimony — regardless of the truth or falsity of anything uttered by him on the stand — cannot supply a basis for section 1983 liability.  Beyond those isolated instances naming Wilson and Watkins, the pleaded facts supply no hints about how either of those defendants had any personal involvement in the misconduct attributed to defendant Bates.  As for Adams, the amended complaint alleges that he did nothing more than arrest a non-party witness on a material witness warrant; no facts have been pleaded suggesting in any way how that arrest violated the plaintiff's rights.

Because the plaintiff has failed to plead with particularity any facts demonstrating personal involvement in constitutional violations by defendants Wilson, Watkins, or Adams, Counts I, II, V, and VI of the amended complaint against them will be dismissed.

B.  Conspiracy Claims

The plaintiff alleges that "the defendant officers" engaged in a conspiracy to violate his civil rights, pleading liability theories under both 42 U.S.C. § 1985 (Count III) and 42 U.S.C. § 1983 (Count IV).  The individual defendants (including Bates) argue that the conspiracy claims must be dismissed because they are barred by the "intracorporate conspiracy doctrine," which holds that claims against officers employed by the same policy agency do not involve separate "persons," and the plaintiff expressly alleged that the defendants were acting "in the course of their employment" and "under color of law."

This argument is not well taken.  However, the conspiracy claims against all of the individual defendants are subject to dismissal for the separate reason that no specific facts are pleaded to establish their subjective individualized participation in a conspiratorial goal.

"To prove [] a conspiracy [under 42 U.S.C. 1983], a plaintiff must establish three things. First, at least two people must have agreed to a 'single plan' to deprive the plaintiff of rights protected by § 1983.  Second, each alleged coconspirator must have subjectively 'shared' the plan's illegal objective.  And third, one of the coconspirators must have taken an 'overt act' to carry out the plan."  *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024) (citing *Rudd v. City of Norton Shores*, 977 F.3d 503, 517 (6th Cir. 2020); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

To plead a conspiracy claim under 42 U.S.C. § 1985(3), the complaint must contain allegations stating that (1) two or more persons entered into an agreement "(2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) [showing] an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen."  *Collyer v. Darling*, 98 F.3d 211,

233 (6th Cir. 1996). In addition, there must be "some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added). Alternatively, a plaintiff may allege that the conspiracy "target[ed] a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework. *Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022) (citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)).

Under either theory, "[t]o get past the pleading stage on a conspiracy claim, a complaint must assert 'specific allegations' that plausibly suggest each of these elements." *Blick*, 105 F.4th at 887 (citing *Rudd*, 977 F.3d at 511-12, 517; *Siefert v. Hamilton County*, 951 F.3d 753, 768 (6th Cir. 2020)). "Conversely, a plaintiff cannot obtain discovery with 'vague and conclusory allegations' of a conspiracy's existence or a defendant's participation in it." *Ibid.* (citing *Rudd*, 977 F.3d at 517; *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401 (6th Cir. 2016); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)).

The defendants identify correctly the general rule that a conspiracy claim is not viable against individuals where it is undisputed that they were employed by the same municipal agency during the relevant occurrences. *See Blick*, 105 F.4th at 887 (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019); *Novak v. City of Parma*, 932 F.3d 421, 436-37 (6th Cir. 2019); *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 826-27 (6th Cir. 2009) ("[A]s the district court correctly concluded, all of the defendants were part of the same collective entity — the Jefferson County Board of Education — and thus there were not two separate 'people' to form a conspiracy.") (cleaned up)). However, the defendants' presentation overlooks a recognized exception to the doctrine that applies where it is alleged that individual defendants acted

unlawfully and that their illegal conduct was beyond the scope of their employment.  *Marvaso v. Sanchez*, 971 F.3d 599, 607 (6th Cir. 2020) (quoting *Jackson*, 925 F.3d at 819; citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994)).  Just as in *Marvaso*, it is alleged here that at least one of the individual defendants intimidated witnesses and falsified evidence, and the defendants have not cited any legal authority holding that such conduct can be regarded as properly within the scope of employment for a city homicide investigator.  Moreover, as *Marvaso* observed, the determination of the scope of employment is an issue appropriate for litigation at the summary judgment (or later) stage, not a basis for decision on a pleading challenge.

Nevertheless, there is a more fundamental defect in the pleading of the conspiracy counts, which is that the amended complaint does not anywhere disclose any substantial factual details tying any of the named individuals to a singular plan or objective.  As to defendants Wilson, Watkins, and Adams, as discussed above, the pleadings disclose no facts at all tying them to any individualized or subjective awareness of or participation in any goal of the supposed conspiracy.  Even as to defendant Bates, the amended complaint does not mention any of the individual defendants by name in connection with any particular acts demonstrating the existence of a single plan, or their subjective awareness of or adoption of any common conspiratorial goals.  As the *Blick* panel explained, the pleading of a conspiracy must demonstrate by particularized facts each defendant's subjective participation in the goals and plan.  *Blick*, 105 F.4th at 887.  The court there affirmed the dismissal of the civil rights conspiracy claim because the plaintiff's complaint failed to "identify the specific defendants who joined this conspiracy" and did not make specific allegations plausibly connecting them to its objectives."  *Id.* at 877-88.  The court explained that a plaintiff may not "treat the defendants as a collective"; instead, he must plead facts "plausibly showing that [a] specific defendant shared the conspiracy's objectives."  *Ibid.*

Here, the generalized narrative of conspiracy by "defendants" collectively is all that the pleading presents.  That is inadequate to frame a viable cause of action for civil conspiracy.  The amended complaint does not contain sufficient specific allegations of civil conspiracies and therefore Counts III and IV must be dismissed against all the individual defendants.

### C.  State Law Claims

Hill alleges that the "police defendants" were guilty of "gross negligence" (Count IX) and "malicious prosecution (Count X) under state law.  Defendants Wilson, Watkins, and Adams argue that the malicious prosecution claims against them fail, again, because the plaintiff has not alleged any specific facts showing how those defendants were involved in or influenced the decision to bring charges.  They also contend that the gross negligence claim must be dismissed because it is a repetition of the intentional tort claims pleaded under other causes of action, and as a matter of Michigan law such claims that attempt to conflate a gross negligence theory with factual allegations sounding in intentional tort do not state a viable cause of action.  Additionally, they argue that the gross negligence claim is barred by the applicable statute of limitations.

Again, the plaintiff has not identified any conduct attributable to defendants Wilson, Watkins, and Adams that would subject them to a malicious prosecution claim under state law.  There is no suggestion that any of them "initiated a prosecution" or influenced the commencement of the case against Hill for a purpose "other than bringing the offender to justice."  *Rogan v. Budzynowski*, No. 19-13477, 2022 WL 4703300, at *11 (E.D. Mich. Sept. 30, 2022) (quoting *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 378, 572 N.W.2d 603, 609-10 (1998)).

The individual defendants correctly point out that a cause of action for "gross negligence" generally is not recognized under Michigan law where it is premised on the same pleaded facts

relied upon for claims of intentional tort. *See VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132, 143 (2004), *abrogated on other grounds by Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008). Michigan courts uniformly "reject[] attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Ibid.* And in appeals involving gross-negligence claims under Michigan law, the Sixth Circuit has "repeatedly" held that other constitutional torts "disguised as gross-negligence claims" cannot proceed beyond summary judgment. *See, e.g.*, *Naji v. City of Dearborn*, 120 F.4th 520, 526 (6th Cir. 2024); *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *King v. City of Lincoln Park*, No. 24-2017, 2025 WL 2218857, at *5 (6th Cir. Aug. 5, 2025) ("[I]n appeals involving gross-negligence claims under Michigan law, [the Sixth Circuit has] 'repeatedly' held that 'excessive-force claims disguised as gross-negligence claims' cannot proceed beyond summary judgment. . . . King's gross-negligence claim is based on the same conduct underlying her excessive-force claim, meaning it is not cognizable under Michigan law.") (citing *Naji*, 120 F.4th at 526) (collecting cases).

The plaintiff points to formulaic recitations in his complaint and asserts that the defendants had a "separate duty" to abide by unspecified "departmental policy" and "statutory protections," and that the defendants had a generalized obligation not to engage in a corrupt investigation, which he says serves to distinguish claims of intentional and negligent harms. But he makes no effort to identify the legal source of any such "separate duty" — other than the constitutional guarantees that prohibited defendant Bates's allegedly fully intentional conduct in fabricating evidence, intimidating witnesses, and instigating criminal charges on false premises. In the *Naji* case, the Sixth Circuit rejected the plaintiff's indistinguishable position, holding that the plaintiff had failed to identify any source of law imposing any separate duty on Detroit police officers to abide by departmental policies. *Naji*, 120 F.4th at 526.

The most recent guidance on these points is supplied by the *King* and *Naji* cases holding that the conflation of claims sounding in negligent and intentional theories is not countenanced under Michigan tort law, and the plaintiff's arguments to the contrary are unavailing.  Count IX will be dismissed as against all of the individual defendants, and Count X will be dismissed against defendants Wilson, Watkins, and Adams.

### IV.  Claims Against Defendant Walter Bates

Defendant Bates does not challenge the sufficiency of the amended complaint where it alleges claims against him for fabrication of evidence (Count II) and malicious prosecution premised on the making of false statements (Count V).  Nor does he argue that he is entitled to qualified immunity on any count.  However, he does move for dismissal of Counts I and VI of the amended complaint.

### A.  *Brady* Claim

In Count I of the amended complaint, Hill alleges that "the defendants" violated his rights under the Due Process Clause of the Fourteenth Amendment by withholding evidence of Bates's misconduct, the fabrication of Meridith's statement, and ballistic evidence of the type of bullets that were used and found at the Keating Street shooting.  ECF No. 55, PageID.1154-56.  The plaintiff bases his claim in this count on the line of cases that begins with *Brady v. Maryland*, 373 U.S. 83 (1963).  It is well established that "'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"  *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *7 (6th Cir. Apr. 14, 2023) (quoting *Brady*, 373 U.S. at 87).  The rule applies to both exculpatory and impeachment evidence.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

- 24 -

The elements of a denial-of-due-process claim based on *Brady* are "that: (1) the evidence is favorable to the accused, (2) the 'evidence must have been suppressed by the State, either willfully or inadvertently,' and (3) prejudice resulted." *Miller*, 2023 WL 2945340, at *7 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Bates argues that the evidence of coercion of a witness (Meridith) was not withheld because it was disclosed to the plaintiff and the jury through Meridith's recantation at trial. He also says that the "falsification" of ballistics evidence by misstatement of the ammunition caliber on a laboratory form allegedly prepared by Bates was merely a "typographical error," and any failure to disclose the correct information did not prejudice the defense because testimony was offered at trial by several expert witnesses that the fatal shots were fired by a "high-powered rifle."

Bates cannot prevail on his second point at this stage of the case because his argument is based on facts beyond the pleadings, where he cites trial testimony that he says establishes his innocent intent, and where he asserts that other persons testified at trial about the nature of the ballistic evidence. However, it is elementary that assessment of the facial sufficiency of the complaint ordinarily is undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). The defendant has not cited any authority supporting his presentment of facts outside the pleadings. And even if the misleading ballistics information was conveyed through a carelessly drafted report, suppressing evidence "inadvertently" can constitute a *Brady* violation. *Strickler*, 527 U.S. at 281-82.

Bates's first argument simply ignores and fails to confront the more salient and troubling allegations against him, namely that he committed a series of felony bank robberies before and during the trial, that his felonious conduct never was disclosed to the defense at any time during the trial proceedings, and that Bates also intimidated a material eyewitness who made statements

directly to Bates informing him that the plaintiff was not present at the scene and had no involvement in the shooting.  The amended complaint alleges that Bates, despite knowing full well the material details of those significant exculpatory facts, never disclosed his knowledge to the defense.  It appears to be undisputed, moreover, at least as to Bates's own contemporaneous felonious conduct, that information about those misdeeds was not disclosed either to the prosecutor or defense counsel, let alone to the trial court or the jury.  It is well settled that a police officer's failure to disclose — even to the prosecutor — impeachment material and misconduct involving witness intimidation is sufficient to make out a *Brady* claim.  *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *7 (6th Cir. Apr. 14, 2023) ("'[P]olice can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material' from the prosecution." (quoting *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009)); *Avery v. City of Milwaukee*, 847 F.3d 433, 443-44 (7th Cir. 2017) ("In *Harris* the criminal defendant was just complaining that the officer didn't admit to falsifying his report.  Here, in contrast, Avery knew that the informants' statements were false, but he did not know about the pressure tactics and inducements the detectives used to obtain them.  And he did not know that Kimbrough had in fact recanted his statement just before trial but was told that he 'had to' testify.  In other words, he did not have the evidence that could help him prove that the informants' statements were false.") (distinguishing *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007)).  As the Wayne County prosecutor's own statement acknowledged, the concealment of Bates's contemporaneous felonious criminal acts likewise was a blatant violation of *Brady* and *Giglio*, and Bates does not argue otherwise.

Count I of the amended complaint adequately pleads a claim against defendant Bates and is not subject to dismissal at this stage of the case.

### B. False Imprisonment

Hill alleges in Count VI of the amended complaint that Bates violated his rights under the Fourth Amendment by causing and continuing Hill's detention without probable cause. In Count V, he alleges a Fourth Amendment violation based on malicious prosecution. Citing *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), Bates argues that Count VI should be dismissed as duplicative of the separate count alleging malicious prosecution.

The defendant is correct as a general matter that the Sixth Circuit has tended to view all Fourth Amendment claims implicating illegal arrests under the generalized rubric of unlawful prosecution without probable cause. As the Sixth Circuit has explained, "false-imprisonment and malicious-prosecution claims implicate the Fourth Amendment's ban on unreasonable seizures." *Ackley v. Twp. of Howland*, No. 22-3229, 2023 WL 5970393, at *3 (6th Cir. Apr. 10, 2023) (citing U.S. Const. amend. IV; *Lester v. Roberts*, 986 F.3d 599, 606-07 (6th Cir. 2021)). "Such claims are 'specific versions of a general unreasonable-seizure claim alleging the same constitutional theory: that the officers seized (and continued to seize) an individual without probable cause.'" *Ibid.* (quoting *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021)) (cleaned up). "Both claims hinge on whether there was probable cause for [the plaintiff's] arrest and prosecution." *Ibid.* (citing *Voyticky v. Village of Timberlake*, 412 F.3d 669, 675, 677 (6th Cir. 2005)). Furthermore, "the probable cause analysis for federal Fourth Amendment claims is essentially the same under Michigan law.'" *Fisher v. Jordan*, 91 F.4th 419, 429 (6th Cir. 2024). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002).

To plead a viable Fourth Amendment malicious prosecution claim, the plaintiff must allege that the defendant (1) "made, influenced, or participated in the decision to prosecute"; (2) "the [prosecution] lacked probable cause"; (3) "the proceeding caused [the plaintiff] to suffer a deprivation of liberty"; and (4) "the prosecution ended in [the plaintiff's] favor." *Jones v. Naert*, 121 F.4th 558, 568 (6th Cir. 2024), *reh'g denied*, No. 23-1056, 2024 WL 5398777 (6th Cir. Dec. 11, 2024) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).   Defendant Bates concedes that those elements are pleaded adequately, at least insofar as they pertain to Count V (malicious prosecution based on false statements), and at least for the purposes of the present motion.   "[A]n investigating officer can be liable for a prosecutor's decision to prosecute if the officer 'influenced or participated' in that decision." *Ibid.* (citing *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020)).   The Sixth Circuit has "recognized that giving the prosecutor reports or other investigative materials that contain 'falsehoods, omissions, or misstatements' may 'constitute participation' . . . if the falsehoods or misstatements were both 'material, or necessary' to the prosecution and made 'knowingly and deliberately, or with a reckless disregard for the truth.'" *Ibid.* (quoting *Sykes*, 625 F.3d at 305, 312).

However, Bates takes issue with the plaintiff's "alternative" pleading in Count VI of a related claim for "continued detention without probable cause."   The Sixth Circuit's recognition of the Fourth Amendment as the common source of false-imprisonment and malicious-prosecution claims does not result in the preclusion of simultaneously pleaded counts alleging each of those claims when the supporting facts include allegations that the supposed probable cause to arrest was based on crucial premises that were conjured from whole cloth by the investigator himself.   A claim of that nature is fundamentally different from the more typical formulation that the prosecution was founded on a totality of facts that did not establish probable cause regardless of

their truthfulness.  That is because the Sixth Circuit has recognized that fabricated evidence claims implicate not only the Fourth Amendment prohibition on arrests without probable cause but also the Fourteenth Amendment Due Process Clause.  *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *6 (6th Cir. Apr. 14, 2023) ("'The Fourteenth Amendment bars an officer from knowingly creating false evidence to obtain a conviction.'" (quoting *Sanford v. City of Detroit*, 815 F. App'x 856, 859 (6th Cir. 2020)).  Significantly, under federal law "'[a] plaintiff does not need to show that the government lacked probable cause to prevail on a fabrication of evidence claim.'"  *Ibid.* (quoting *France v. Lucas*, 836 F.3d 612, 629 (6th Cir. 2016)).  It follows, then, that the causes of action pleaded in Counts V and VI are founded on distinct theories of liability with distinct elements; Count VI requires proof of an element (absence of probable cause) which is not required to prevail on a fabrication of evidence claim (Count V).

Despite the generalized rubric applicable to causes of action for false arrest generally under the Fourth Amendment, the amended complaint in this case invokes distinct theories of liability that may be allowed to proceed under separate counts.  Bates has not separately challenged the adequacy of the pleading of Count V (malicious prosecution based on false statements), nor has he mounted any developed argument attacking the sufficiency of the pleading of the elements for Count VI.  His request to dismiss Count VI will be denied.

## IV.  Conclusion

The City of Detroit's bankruptcy discharge bars the plaintiff's claims against it in this case, so the City's motion to dismiss will be granted.  Individual defendants Wilson, Watkins, and Bates filed their own motion to dismiss.  The amended complaint does not plead viable claims against Wilson and Watkins in any of the counts, and it does not plead a viable claim for gross negligence against defendant Bates.  Defendant Adams filed a separate motion to dismiss, which will be

granted for the same reasons that all claims against Wilson and Watkins will be dismissed, that is, that the amended complaint fails to allege sufficient facts to establish the personal involvement of those individuals in any constitutional or state law violation against the plaintiff.

Accordingly, it is **ORDERED** that the motion to dismiss by the City of Detroit (ECF No. 14) is **GRANTED**.

It is further **ORDERED** that the motion to dismiss by defendants Ernest Wilson, Fred Watkins, and Walter Bates (ECF No. 37) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the motion to dismiss by defendant Frazer Adams (ECF No. 68) is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE** in its entirety as to defendants City of Detroit, Ernest Wilson, Fred Watkins, and Frazer Adams **ONLY**.

It is further **ORDERED** that Count IX of amended complaint is **DISMISSED WITH PREJUDICE** as to defendant Walter Bates.  The motions are **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 2, 2025